NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11623

COMMONWEALTH  vs.  WALTER THOMPSON.


November 10, 2014.


Controlled Substances.  "School Zone" Statute.  Statute, Amendment, Retroactive application.


     After a jury trial, Walter Thompson was convicted of distributing cocaine and doing so in a school zone.  While his appeal was pending in the Appeals Court, the school zone statute, G. L. c. 94C, § 32J, was amended to reduce the radius of the school zone from 1,000 feet to 300 feet.  St. 2012, c. 192, § 30.  In an unpublished decision, a panel of the Appeals Court ruled that this amendment did not have retroactive effect, rejected Thompson's other claims of error, and affirmed the convictions.  Commonwealth v. Thompson, 83 Mass. App. Ct. 1135 (2013).  We granted Thompson's application for further appellate review.  467 Mass. 1101 (2014).  We now affirm the convictions, on somewhat different grounds.

     Evidence.  We review the evidence presented at trial in the light most favorable to the Commonwealth.  Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979).  On July 31, 2008, at approximately 10 P.M., Cambridge police Detectives Kevin Branley and Ed Liberacki were conducting patrols in Cambridge.  From their parked, unmarked vehicle, they observed (Branley using binoculars) Michael Benoit and Lori Quigley sitting on a curb in the parking lot of a convenience store on the corner of Prospect Street and Broadway.  Both detectives were experienced in detecting street-level narcotics sales and were familiar with this parking lot from previous narcotics investigations.  Benoit and Quigley were counting change in their open hands and looking furtively in all directions.  Quigley stood and made a call at a pay telephone attached to the side of the convenience store.

After about twenty seconds, she hung up the telephone and returned to the curb, where she and Benoit continued looking up and down the streets. Quigley paced as she did so. After about ten minutes, Thompson approached on bicycle on Broadway from the direction of Harvard Square. He rode through the parking lot and, without stopping, exchanged a few words with Quigley. Thompson, with Quigley following him at a hurried pace, continued on Prospect Street and stopped at a nearby house. As Quigley approached him, they looked back and forth at each other and all around in all directions. Quigley extended her hands toward Thompson, with one palm open and facing up, and the other in a closed fist. Thompson did the same, extending a closed fist toward Quigley's open hand and an open hand to her closed fist. Their hands made contact briefly, in a manner consistent with exchanging items between them. This exchange took place approximately 500 feet from school property. Quigley continued pacing, acting as though she was nervous. She returned to where Benoit was sitting at the curb. Quigley and Benoit walked at a quickened pace across the parking lot and onto Broadway toward Harvard Square. As they walked behind a fence at a nearby house, Thompson got back on his bicycle and rode down Prospect Street toward Central Square.

The detectives radioed a description of Thompson and pulled into the driveway of the house. They got out of their car and walked up the driveway alongside the house. They found Quigley and Benoit behind the house in an area that was well lit with floodlights. Benoit had in his hand an object that turned out to be a small plastic bag containing "crack" cocaine, and he was opening the bag. The detectives identified themselves and displayed their badges. Benoit quickly extended his hand over a fence and dropped the bag. The detectives detained them and radioed for backup. Once backup arrived, Liberacki retrieved the bag from where Benoit had dropped it. It was the cut-off corner of a plastic sandwich bag, consistent with packaging of approximately one-half gram of crack cocaine, which was typically valued between forty and sixty dollars. The detectives arrested Benoit and Quigley and read them the Miranda warnings. Both Benoit and Quigley were searched; among other things, a glass tube of the type used to smoke crack cocaine was found on Quigley's person.

Other officers stopped Thompson in an area between the store and his home. Branley arrived shortly thereafter and read Thompson the Miranda warnings. Thompson said that he understood his rights and wished to speak to the detective. In response to Branley's question, Thompson stated politely that he was coming

from a friend's house in Charlestown.  Thompson was searched, resulting in the discovery of two folds of cash, one containing forty-five dollars and the other containing forty dollars, a cellular telephone and charger, a pack of cigarettes, and a cigarette lighter.

Sufficiency of evidence.  Based on the foregoing evidence, it is clear that the jury had ample basis to convict Thompson of distributing cocaine.  Contrary to Thompson's argument, the evidence does not equally suggest that Benoit was in possession of the cocaine at all times.  In particular, the officers observed a hand-to-hand transaction between Thompson and Quigley, after which Thompson was found with no drugs on his person, but with folds of cash, and Quigley's companion Benoit was found with drugs (which he quickly discarded) having roughly the value of either cash fold found on Thompson.  Together with the participants' furtive behavior, Thompson's arrival within minutes after Quigley made the telephone call, and the glass tube found on Quigley's person, this evidence requires no leap of conjecture to conclude that Thompson sold the crack cocaine to Quigley.

Retroactivity of St. 2012, c. 192, § 30.  In Commonwealth v. Bradley, 466 Mass. 551, 561 (2013), we ruled that the recent amendment to the school zone statute, St. 2012, c. 192, § 30, applies retroactively to "all cases alleging a school zone violation for which a guilty plea had not been accepted or conviction entered as of" the effective date of the amendment. Thompson now argues that we should extend this rule to his case, where he had been tried and convicted before the effective date, but his direct appeal was pending on that date.  We disagree.

As we discussed in Bradley, supra at 555, "the Legislature did not clearly express an intention that § 30 apply retroactively."  We nonetheless concluded, after considering the legislative purpose of the statute, that limiting § 30 to prospective application would be inconsistent with that purpose, or in the words of G. L. c. 4, § 6, "repugnant to the context of the same statute."  Bradley, supra at 555-561.  As § 30 "was enacted to diminish the unfair disparate impact of the prior statute on urban and minority residents," id. at 559, we concluded that failing to apply it to charges that were pending in the trial court on the effective date would wrongly prolong that unfair disparate impact.  Id. at 561.

The situation is different, however, where the charges were already resolved with a trial and conviction that occurred

before the effective date of the amendment.  Applying § 30 retroactively in such cases would necessitate new trials on convictions that had been entered before the Legislature acted to change the school zone statute.  While it is inconsistent with the Legislature's purpose not to grant defendants the benefit of § 30 in trials that take place <u>after</u> the effective date, we conclude that the Legislature did not intend to grant new trials to defendants who <u>already</u> had been convicted.  Accordingly, we hold that St. 2012, c. 192, § 30, does not entitle Thompson to a new trial on his conviction of a school zone violation where his conviction was entered prior to August 2, 2012.[1]

<u>Other issues</u>.  Finally, Thompson raises two additional claims of error:  first, that certain photographs were wrongly admitted and, second, that the judge gave an improper response to a question from the deliberating jury.  He objected to neither alleged error at trial.  We have carefully reviewed the record and agree with the Appeals Court that there was no substantial risk of a miscarriage of justice.

<u>Judgments affirmed</u>.

<u>Matthew C. Harper-Nixon</u> for the defendant.
<u>Kevin J. Curtin</u>, Assistant District Attorney, for the Commonwealth.
<u>Benjamin H. Keehn</u>, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

---

[1] We leave for another day the question whether St. 2012, c. 192, § 30, would apply on retrial if a defendant's conviction of a school zone violation, entered before August 2, 2012, were subsequently reversed on other grounds.  Because we affirm Thompson's convictions, we need not decide that issue today.